UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARE CONTINUUM, INC.
d/b/a SIGNATURE HOME CARE,

      Plaintiff/
      Counter-defendant,

vs.
      Case No. 09-CV-10573
      HON. GEORGE CARAM STEEH

THE GRAND COURT OF FARMINGTON HILLS,
BROOKDALE LIVING COMMUNITIES - GC, LLC, and
BROOKDALE LIVING COMMUNITIES OF MICHIGAN, INC.,

      Defendants/
      Counter-plaintiffs.

_____/

## BENCH TRIAL ORDER - PHASE I

This matter is before the court following an October 27, 2009 bench trial to adjudicate the parties' rights under a June 10, 2008 "Resident Agreement" lease.

### I. Background

Plaintiff Care Continuum, Inc. d/b/a Signature Home Care ("Signature") provides home care personal services to senior citizens, including several past and existing residents of defendant The Grand Court of Farmington Hills ("GCFH"), an independent-living retirement community located in Farmington Hills, Michigan. Defendants Brookdale Living Communities - GC, L.L.C. and Brookdale Living Communities of Michigan participate in the operation of GCFH. Signature contracted directly with GCFH residents while leasing GCFH Apartment No. 602A under a June 10, 2008 "Resident Agreement." Signature also operated under a written April 1, 2003 "Resident Access to Personal Care Services, Service Agreement" ("Services Agreement") with GCFH, which has since been terminated.

Signature filed a complaint in Michigan's Oakland County Circuit Court on February 5, 2009 alleging that, in December 2008, defendants "arranged for" ComForcare Senior Services to provide competing personal care services to GCFH residents. Signature alleges the defendants have made false statements to GCFH residents that Signature is leaving GCFH and helping with the transition to ComForcare, that several Signature employees will be joining ComForcare, and that Signature will no longer be occupying an office at GCFH. Signature alleges these false statements caused their clients to become fearful and cancel Signature personal services contracts. Signature alleges the defendants wrongfully threatened to evict Signature from Apartment No. 602A notwithstanding Signature's contractual authority and intention to renew the lease under the terms of the Resident Agreement. Signature seeks declaratory and injunctive relief as GCFH's lessee. Signature also alleges tortious interference with contract, and tortious interference with business relations. Defendants removed the lawsuit to federal court on February 17, 2009 premised on diversity jurisdiction. 28 U.S.C. § 1331.

On March 3, 2009, defendants filed a counterclaim alleging the services Signature provided to GCFH residents under the Services Agreement were deficient, requiring Signature to submit a "Plan of Action" in March 2008 to address specific deficiencies. Defendants allege Signature failed to implement the Plan, causing GCFH to notify Signature on January 20, 2009 that the Services Agreement was being terminated for cause due to Signature's breach. Defendants allege that Signature has since refused to vacate Apartment No. 602A and share information with GCFH about residents' needs, and has recommended to GCFH residents that they leave GCFH. Defendants allege that the Resident Agreement leasing Apartment No. 602A to Signature terminated as a matter of law with the termination of the Services Agreement. Defendants allege breach of the Services Agreement, rescission of the Resident Agreement, the right to summary eviction,

tortious interference with business relations, and tortious interference with contract.

On May 12, 2009, the court granted defendants' unopposed motion to bifurcate trial and discovery into two phases, with Phase I adjudicating Signature's claim for declaratory and injunctive relief as to the Resident Agreement, and defendants' counterclaims seeking rescission of the Resident Agreement and the right to summary eviction.  Phase II involves adjudication of the remaining claims and counterclaims, as well as damages.  The parties agreed that Phase I would involve a non-jury trial.  As scheduled, the Phase I non-jury trial was held on October 27, 2009.

## II.  Phase I Non-Jury Trial

### A. The Resident Agreement and Services Agreement

The Resident Agreement executed by the parties on June 10, 2008 reads in pertinent part:

> THE GRAND COURT agrees to provide the following facilities and service for the RESIDENT [Signature Home Care], for the term of one year, commencing 5/1/08 and ending 4/30/09 At the following described premises located in the City of Farmington Hills, Oakland County, Michigan.
>
> The Apartment Number 602A
> THE GRAND COURT, Farmington Hills
> 36550 Grand River Ave.
> Farmington Hills, Mi 48335
>
> The RESIDENT covenants and agrees to pay THE GRAND COURT, without demand, the monthly residency fee of 2132 - for the resident [sic] in advance on or before the first day of every month.  . . . .  The above mentioned premises shall be occupied as a private dwelling apartment by the Resident.
> . . . .
>
> \*       \*       \*
>
> 12.  The RESIDENT is hereby granted an option to renew this agreement annually.  The rental fee will increase beginning in the first of the month following an anniversary date.  Resident agrees to execute such renewal thirty (30) days prior to the anniversary date.  In the event resident does not execute such renewal by the anniversary date, and the resident holds over occupancy after the expiration of this lease, the monthly rental fee charged will be the published rental rate in the current GRAND COURT brochures.

13. In the event RESIDENT becomes (a) incapable of living independently, as certified by a physician, (b) in the event of death, or (c) becomes eligible to move into a rental unit in senior citizen housing subsidized by a local, state, or federal program, RESIDENT may terminate this agreement of the specific period by notifying THE GRAND COURT in writing at least 30 days prior to vacating the apartment. The Grand Court, Farmington Hills reserves the right to show the resident's apartment once notices [sic] has been given.

14. In the event Resident becomes ill or incapacitated to the point that they cannot receive proper care in his own living quarters, or becomes mentally or emotionally disturbed so as to be deemed detrimental to the health or peace of the other Residents, the Executive Director, in his sole discretion shall have the right to terminate this agreement upon 30 days written notice to the resident and/or residents family member responsible for the residents affairs. However, in the event residents [sic] function declines to the extent of resident becomes a threat to himself or, other residents, staff members, or any person, the Executive Director reserves the right to show the apartment after the notice to vacate has been given to the resident.

*   *   *

16. THE GRAND COURT may terminate this agreement upon violation by the Resident, the Resident's guests or the Resident's private duty employees or any terms of this residency agreement or the residency guidelines.

The Services Agreement provides in pertinent part:

    This resident Access to PERSONAL CARE SERVICES, Services Agreement (this "AGREEMENT") is made on the 1st day of April, 2003 (the "Effective Date") by and between THE GRAND COURT OF FARMINGTON HILLS and SIGNATURE HOME CARE ("SHC")

*   *   *

**Section 1. Services and obligations of SHC**

1.1 Services
(a) SHC shall establish and operate a Personal Care Services Program at the FACILITY . . . .

(b) SHC shall make the SERVICES available to RESIDENTS and operate the PERSONAL CARE SERVICES PROGRAM twenty-four (24) hours a day and seven (7) days a week, inclusive of holidays.

*   *   *

**Section 2. Services and Obligations of FACILITY.** FACILITY shall:

(a) make available space at the FACILITY, as reasonably necessary, to

4

enable SHC to perform the services contemplated under this Agreement provided that such space shall include, without limitation, that certain office space at the <u>FACILITY</u> which is described on *<u>EXHIBIT B</u>* attached hereto[.]

**Section 3. Term.**

The term of this Agreement shall continue on the Effective Date and shall continue for a period of five (5) years (the "<u>INITIAL TERM</u>").  <u>SHC</u> may elect to extend the <u>INITIAL TERM</u> of this Agreement for successive one year periods (the "<u>EXTENTION TERMS</u>" [sic]) unless <u>SEC</u> shall give the <u>FACILITY</u> written notice of it's [sic] election to not extend the Term at least sixty (60) days prior to the expiration of the <u>INITIAL TERM</u>.  The <u>INITIAL TERM</u> and the <u>EXTENSION TERM</u>, if any, shall be herein referred to as the ("TERM").

\*          \*          \*

**Section 10.  Events of Termination**

10.1 <u>Termination for Cause.</u>  This <u>AGREEMENT</u> may be terminated by either party upon the occurrence of any one (1) of the following:

(a) A breach of this <u>AGREEMENT</u> by the other party provided that the breaching party shall have been provided with notice and a thirty (30) day cure period.

(b) If a party shall apply for or consent to the appointment of a receiver, trustee or liquidator of itself or of all or a substantial part of its assets, file a petition in bankruptcy, or admit in writing its inability to pay its debts as they become due, make general assignments for the benefit of creditors, file a petition or answer seeking reorganization or arrangement with creditors or take advantage of any insolvency law, or if an order, judgment or decree shall be entered by a court of competent jurisdiction or an application of a creditor, adjudicating such party to be bankrupty [sic] or insolvent, or approving a petition seeking reorganization of such party or appointing a receiver, trustee, or liquidator of such party or of all or a substantial part of its assets, and such order, judgment, or decree shall continue in effect and unstayed for a period of thirty (30) consecutive calendar days, then either of the other parties may terminate this <u>AGREEMENT</u> upon ten (10) business days' prior written notice to such party.

10.2 Immediate <u>Termination.</u>  Notwithstanding anything to the contrary contained herein, this <u>AGREEMENT</u> will be terminated upon the following events: (a) the suspension or revocation of any license, certificate, or other legal credentials necessary for <u>SHC</u> to provide any of the services covered by this <u>AGREEMENT</u>; (b) the suspension revocation of any license, certificate, or other legal credentials necessary for <u>FACILITY</u> to provide or support any of the services covered by this <u>AGREEMENT</u>; and (c) failure by either party to maintain the insurance required hereunder.

5

>  10.2 <u>Additional Termination Rights.</u>   <u>FACILITY</u> may terminate this <u>AGREEMENT</u>, with cause, upon sixty (60) days prior written notice to <u>SHC</u>. SHC may terminate this <u>AGREEMENT</u>, with cause, upon sixty (60) days prior written notice to <u>FACILITY</u>.
>
> \*   \*   \*
>
> 13.8 <u>Entire AGREEMENT/Amendment.</u>  This <u>AGREEMENT</u> constitutes the entire <u>AGREEMENT</u> between the parties regarding the subject matter hereof, and no representations, warranties, inducements, promises or agreements, oral or written, between the parties not embodied in this agreement shall be of any force or effect.  This <u>AGREEMENT</u> may be amended upon mutual, written agreement of the parties hereto.

(italics emphasis added).  For purposes of the Phase I Non-Jury Trial only, the parties agree that the defendants legitimately terminated the Services Agreement.

As it relates to the question of possessory rights, Signature argues that the Resident Agreement stands on its own, independent of the Services Agreement.  Signature asserts that the parties did not intend that the Resident Agreement be incorporated as part of the Services Agreement as "Exhibit B," referred to in Section 2(a) of the Services Agreement, or that a termination of the Services Agreement would also terminate the Resident Agreement.  Signature maintains that the parties understood Signature would continue to provide services to its clients at GCFH from Apartment No. 602A, under service contracts to which the defendants were not a party.  Signature asserts that it's option to annually renew the Resident Agreement under paragraph 12 remains enforceable, and that it renewed the lease of Apartment No. 602A by providing the defendants with timely notice of renewal in March 2009.

Defendants argue that "Exhibit B" referred to in the Services Agreement is the Resident Agreement, and that the two documents must be read together to discern the parties' intent that Signature was entitled to lease Apartment No. 602A only as long as Signature continued to provide residents with personal care services under the terms of the Services Agreement.  Defendants assert that the initial Resident Agreement and the

6

Services Agreement were executed in reasonable temporal proximity, and therefore they must be read together to discern the intent of the parties. Defendants further argue that Signature executed the Resident Agreement only for GCFH's internal audit purposes, not to lease Apartment No. 602A as a "resident" of GCFH. Defendants argue in the alternative that GCFH breached the Resident Agreement by not occupying Apartment No. 602A "as a private dwelling apartment."

### B. Michigan Contract Law

The parties agree Michigan law is controlling in this diversity action. Accordingly, the court applies the principles of Michigan contract law. See Wonderland Shopping Center Venture Ltd. Partnership v. CDC Mortgage Capital, Inc., 274 F.3d 1085, 1092 (6th Cir. 2001). A court's obligation in interpreting a written contract is to discern the contracting parties' intent. Quality Products and Concepts Co. v. Nagel Precision, Inc., 469 Mich. 362, 375, 666 N.W.2d 251 (2003) (citing Sobczak v. Kotwicki, 347 Mich. 242, 249, 79 N.W.2d 471 (1956)). This intent is to be determined in light of the surrounding circumstances and from a reading of the instrument as a whole. Cleveland v. Detroit Trust Co., 264 Mich. 253, 257, 249 N.W.2d 842 (1933). If the contract language is clear and unambiguous, the contract is construed as a matter of law and enforced as written unless contrary to public policy. Quality Products, 469 Mich. at 375 (citing Farm Bureau Mut. Ins. Co. of Michigan v. Nikkel, 460 Mich. 558, 570, 596 N.W.2d 915 (1999)); Port Huron Ed. Ass'n v. Port Huron Area School Dist., 452 Mich. 309, 323, 550 N.W.2d 228 (1996) (citing Dykema v. Muskegon Piston Ring Co., 348 Mich. 129, 138, 82 N.W.2d 467 (1957)).

Extrinsic evidence may be used "to dispose of a potential ambiguity, to prove the existence of a potential ambiguity, or to indicate the actual intent of the parties where an actual ambiguity exists." Wonderland Shopping, 274 F.3d at 1095 (citing Am. Anodco, Inc, v. Reynolds Metals Co., 743 F.2d 417, 422 (6th Cir. 1984)). If the contract language

remains unclear or susceptible to more than one meaning, contract interpretation becomes a question of fact that must be decided by the fact-finder upon an examination of the extrinsic evidence. Port Huron Ed. Ass'n, 452 Mich. at 323; Klapp v. United Insurance Group Agency, Inc., 468 Mich. 459, 453-454, 663 N.W.2d 447 (2003). Extrinsic evidence indicating the contemporaneous understanding of the parties is particularly helpful as "an aid in construction of the disputed terms." Klapp, 468 Mich. at 469-70 (quoting Penzien v. Dielectric Products Engineering Co., Inc., 374 Mich. 444, 449, 132 N.W.2d 130 (1965)).

Ultimately, in order to form a valid contract, there must be a meeting of the minds. Heritage Broadcasting Co. v. Wilson Communications, Inc., 170 Mich. App. 812, 818, 428 N.W.2d 784 (1988) (citing Fisk v. Fisk, 328 Mich. 570, 574, 44 N.W.2d 184 (1950) and Smith v. Neilan, 44 Mich. App. 394, 397, 205 N.W.2d 186 (1973)). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." Heritage Broadcasting, 170 Mich. App. at 818 (citing Siegel v. Spinney, 141 Mich. 346, 350, 367 N.W.2d 860 (1985)).

**C. Analysis**

The Resident Agreement and surrounding circumstances demonstrate that the parties executed the Resident Agreement for the intended purpose of Signature rendering personal care services to GCFH residents. Cleveland, 264 Mich. at 257. The Resident Agreement contains enforceable terms demonstrating the parties intended that Signature would lease Apartment No. 602A "for the term of one year, commencing 5/1/08 and ending 4/30/09." Id. The Resident Agreement also contains written provisions the parties clearly did not intend to be enforceable, including: (1) Signature's promise to occupy Apartment No. 602A as a "private dwelling apartment"; (2) GCFH's right to terminate the lease with 30 days notice if Signature became "incapable of living independently, as certified by a physician," "in the event of death," or if Signature became "eligible to move into a rental unit

8

in [subsidized] senior citizen housing"; and (3) GCFH's right to terminate the lease with 30 days notice if Signature became "ill or incapacitated to the point that they cannot receive proper care in [their] own living quarters, or [became] mentally or emotionally disturbed so as to be deemed detrimental to the health or peace of the other Residents." Id.

Given the differences in circumstances between a senior citizen lessee and a corporate lessee such as Signature, an ambiguity exists within the Resident Agreement whether the parties intended that Signature would retain an *indefinite* "option to renew this agreement annually." The Resident Agreement contemplated termination of the lease based on potential physical characteristics of incapacity, illness, or death attributable to a mortal senior citizen, not to a corporate entity. The Resident Agreement itself does not contemplate circumstances for termination that might arise where the lessee is a corporate entity with a potential perpetual existence such as Signature. The Resident Agreement does expressly provide for annual renewal. To resolve the ambiguity whether Signature enjoyed an indefinite contractual right under the Residential Agreement to annually renew the lease, the court looks to the Services Agreement and other extrinsic evidence to discern the parties' actual intent. Wonderland Shopping, 274 F.3d at 1095; Port Huron Ed. Ass'n, 452 Mich. at 323; Klapp, 468 Mich. at 453-54, 469-70. Signature's position that the Resident Agreement should be read as a stand-alone document, and defendants' position that the Resident Agreement is merely an exhibit lacking any enforceable promises, are each unreasonable given the totality of the circumstances under which the Resident Agreement and Services Agreement were executed. Cleveland, 264 Mich. at 257.

> GCFH agreed under Section 2 of the Services Agreement to
>
> make available space at [GCFH], as reasonably necessary, to enable SHC to perform the services contemplated under this Agreement provided that such space shall include, without limitation, that certain office space at the [GCFH] FACILITY which is described on EXHIBIT B attached hereto[.]

The Services Agreement also provided for an initial five-year term, after which Signature could elect to extend the term "for successive one year periods."  Services Agreement, Section 3, at 4.  The Services Agreement could be terminated by either Signature or GCFH: (1) for a breach of the Services Agreement; (2) for either parties' demonstrated insolvency or potential insolvency i.e. filing for bankruptcy; (3) for the suspension or revocation of a necessary license, certificate, or other legal credentials held by either party; or (4) "for cause."

Defendants have not shown by a preponderance of the evidence that "Exhibit B" referred to in Section 2 of the Services Agreement "as attached hereto" was in fact an earlier Resident Agreement.  The Services Agreement expresses the parties' intent that it could be terminated before the end of its term based on circumstances applicable to Signature as a corporate entity, such as insolvency or loss of necessary licensing.  Signature's right to renew the five-year Services Agreement "for successive one year periods" was dependent upon Signature's continuing right "to perform the services contemplated under" the Services Agreement.  The Services Agreement does not address the situation where Signature is delivering personal services to GCFH residents under separate contracts executed by Signature and the residents to which GCFH is not a party.

Upon an examination of the Resident Agreement in conjunction with the Services Agreement and other extrinsic evidence presented at trial, the court finds that the parties never reached a "meeting of the minds" whether Signature had the right to renew the Resident Agreement under paragraph 12 in the event the Services Agreement was terminated. Heritage Broadcasting, 170 Mich. App. at 818.  The objective evidence shows that, in executing the Resident Agreement, the parties did not contemplate the situation, now before the court, whether Signature would have a continuing contractual right to renew the Resident Agreement after the Services Agreement was terminated by either party. Id.

The Services Agreement was executed on April 1, 2003, while the Resident Agreement at issue was executed on June 30, 2008. The parties did not present evidence that the renewal option in paragraph 12 of the Resident Agreement was negotiated, discussed, reviewed, or considered by anyone involved in the June 30, 2008 transaction.

In sum, the parties never reached an agreement that Signature would have an indefinite, unconditional right to lease Apartment No. 602A. Neither did the parties reach an agreement that the Resident Agreement would automatically terminate upon termination of the Services Agreement. Accordingly, the court finds that Signature does not have a contractual right to renew the Resident Agreement under paragraph 12 of the Resident Agreement.

### III. Conclusion

Signature does not have a contractual right to renew the June 28, 2008 Resident Agreement lease. Defendants are entitled to entry of judgment on Signature's claim for declaratory and injunctive relief that Signature is currently entitled to occupy Apartment No. 602A under the terms of the Resident Agreement lease. Signature is entitled to entry of judgment on defendants' counterclaim for rescission of the June 28, 2008 Resident Agreement. Defendants are entitled to entry of judgment on their counterclaim that they are now entitled to evict Signature from Apartment No. 602A. Accordingly, Signature shall vacate Apartment No. 602A within ten days of entry of this Order. Consistent with the court's comments from the bench on October 27, 2009, the court makes no ruling here as to Signature's continuing right to access its clients at the GCFH facility.

SO ORDERED.

Dated: December 10, 2009

             s/George Caram Steeh
             GEORGE CARAM STEEH
             UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on December 10, 2009, by electronic and/or ordinary mail.

s/Marcia Beachemin
Deputy Clerk